# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| INGA MYLES | CIVIL ACTION |
| VERSUS | |
| | NO. 17-516-JWD-RLB |
| PINNACLE ENTERTAINMENT, INC., ET AL. | |

## RULING AND ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 16) filed by Third-Party Defendant Otis Elevator Company ("Otis"). Defendant and Third-Party Plaintiff Pinnacle Entertainment, Inc. ("Pinnacle") opposes the motion. (Doc. 27). Otis has filed a reply brief in support of its motion. (Doc. 28). Oral argument is not necessary. After careful consideration of the parties' arguments, the facts in the record, and the applicable law, and for the following reasons, Otis's motion (Doc. 16) is granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Background

Plaintiff Inga Myles filed suit on July 21, 2017, against Pinnacle, alleging that she sustained serious injuries after violently falling on an escalator at L'Auberge Casino in Baton Rouge, Louisiana. (Doc. 1-2). The casino is owned and operated by Pinnacle. (*Id.* at 3). Myles alleges that "suddenly and without warning," her walking cane "became caught in the escalator[,] causing her to fall backwards violently as her leg and hair were caught in the escalator." (*Id.* at 4). She claims that Pinnacle "failed to properly maintain, inspect, control and/or operate the escalator so as to render it dangerously slippery and unsafe for use," and that this dangerous condition caused her to fall. (*Id.*). She further alleges that Pinnacle failed to warn Myles and other casino guests of

the dangerous condition, and failed to inspect the elevator when it knew or should have known that "said inspection was necessary to prevent injury." (*Id.*). As a result of the fall, Myles injured her knee and neck, "causing her severe pain and suffering." (*Id.* at 5).

On December 19, 2017, Pinnacle filed a third-party complaint against Otis, asserting that Otis is liable to Pinnacle "for full indemnification and all defenses [sic] costs, including court costs, and attorney fees." (Doc. 9 at 1). Pinnacle alleges that Otis manufactured and installed the escalator on which Myles fell. (*Id.* at 2). Pinnacle asserts that on June 1, 2016, a partnership owned by Pinnacle, PNK (Baton Rouge) Partnership, entered into a service agreement with Otis "to service and maintain the escalator in question to keep it in a safe and operational condition." (*Id.* at 2–3). It alleges that the service agreement provides for "indemnification and defense for any breach of the contract, or for any liability, including liability to third parties, for the services provided in the contract." (*Id.* at 3). Because any duty to maintain the elevator "was contractually assumed by Otis," Pinnacle alleges that Otis is liable for all costs associated with its defense of this lawsuit, including "attorney fees and full indemnification." (*Id.* at 3–4).

The service agreement generally provides that Otis is responsible for "regularly and systematically" examining, adjusting, cleaning, and lubricating the components of the escalator in question. (Doc. 27-1 at 6 & 8). The service agreement also provides that Pinnacle would "instruct or warn passengers in the proper use of the" escalator and was required to "keep the [escalator] under continued surveillance by competent personnel to detect irregularities between [escalator] examinations." (*Id.* at 9). Between inspections by Otis, it was Pinnacle's duty to "report immediately any condition that may indicate the need for correction" and "shut down the equipment immediately upon manifestation of any irregularities in operation or appearance of the equipment." (*Id.* at 9–10).

An addendum to the service agreement includes an indemnification provision, which provides:

> **Indemnification.** **Vendor Indemnification:** Notwithstanding anything in this Agreement to the contrary, Vendor agrees to indemnify, defend and hold Customer and its subsidiaries, affiliates, parent company, and their respective officers, directors, shareholders, employees, agents, and contractors, harmless from and against any and all third-party claims, demands, causes of action, damages, liabilities, fines and expenses, including reasonable attorneys' fees and costs (collectively "Claims"), including without limitation direct and indirect, incidental damages, that are directly or indirectly related to (i) Vendor's performance of the Agreement, (ii) Vendor's failure to comply with any obligations set forth in the Agreement, (iii) the damage or destruction of real or personal property or personal injuries (including death) to the extent caused by Vendor, (iv) the intentional, reckless or negligent acts or omission of Vendor or its officer, directors, shareholders, employees, agents, contractors, subsidiaries and affiliates, (v) Vendor's failure to comply with applicable laws, regulations or orders, or (vi) excluding the negligence of an indemnified party, any claim or cause of action by or on behalf of Vendor's employee(s) against Customer, including without limitation claims for worker's compensation or personal injury, employment benefits, or any federal or state employment law or regulation. The obligations of this paragraph shall survive the expiration or termination of this Agreement.

(Doc. 16-3 at 3).

**B.   Parties' Arguments**

In support of its motion, Otis argues that it is not liable to Pinnacle for indemnification because none of the six conditions triggering indemnification was satisfied. (Doc. 16-1 at 3–4). Citing to the addendum's indemnification provision (Doc. 16-3 at 3), Otis asserts that Pinnacle has not submitted any evidence that the incident at issue was related to Otis's performance of the service agreement or arose out of Otis's failure to comply with any of its contractual obligations. (*Id.* at 3). Similarly, Otis urges that there is no evidence that the incident was caused by an act or omission by Otis, whether intentional, reckless, or negligent. (*Id.* at 4). Otis points out that the final two conditions triggering indemnification are inapplicable to the facts at hand, and Pinnacle has not submitted any evidence supporting the existence of either. (*Id.*).

Next, Otis argues that Pinnacle will be liable for its own fault only under Louisiana's comparative-fault scheme. (Doc. 16-1 at 5). Otis asserts that under Louisiana contract law, indemnity agreements are assumed to apply only to the extent the indemnitor is at fault, and that a provision specifically providing for indemnity regardless of fault would be required to construe the provision in Pinnacle's favor. (*Id.* at 6–7). Thus, according to Otis, because no party has submitted any evidence of fault on its part, the indemnity provision was not triggered and Otis has no duty to indemnify Pinnacle for any costs associated with Myles' suit. (*Id.* at 8).

In response, Pinnacle argues that because Myles alleged that Pinnacle "failed to inspect and maintain the escalator," and inspection and maintenance of the escalator "falls within the scope of the work to be performed by" Otis, the indemnification provision was triggered. (Doc. 27 at 5–6). Pinnacle asserts that Otis's duty to indemnify exists even if Pinnacle is not found liable to Myles. (*Id.* at 6–7). Finally, Pinnacle takes issue with the case law cited in Otis's brief and claims that because it had no notice of any defect in the escalator, any such defect is Otis's—not Pinnacle's—responsibility. (*Id.* at 7–8).

Otis filed a reply, in which it asserts that Pinnacle, as the owner of the escalator, "has distinct, independent duties with respect to its property and the escalators in its building." (Doc. 28 at 1). Otis reiterated that Myles sued Pinnacle for negligence, not Otis, and that "[n]othing in the service agreement obligates Otis to defend Pinnacle for allegations of Pinnacle's own negligence." (*Id.* at 2–3). Otis also argues that Pinnacle failed to properly distinguish its cited case law, and that it has no duty to indemnify Pinnacle regardless of Pinnacle's liability. (*Id.* at 3–4).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4

56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant must "go beyond the pleadings" and submit competent evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

The Fifth Circuit has further explained:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### III. DISCUSSION

It is well established that "[a] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981). Thus, an indemnification agreement "will not afford protection to an indemnitee against the consequences of [its] own negligent act unless the contract clearly expresses such an obligation in unequivocal terms." *Id.*; *see also Chevron USA, Inc. v. Aker Maritime Inc.*, No. 03-2027, 2010 WL 4539385, at *4 (E.D. La. Nov. 3, 2010) (finding a duty to indemnify where an indemnity provision "expressly and unequivocally" stated that a duty existed "regardless" of which party was at fault for an incident, as long as the incident was "connected with" the indemnitor's performance). This is because an agreement to indemnify an entity for its own negligence "imposes an extraordinary obligation." *Corbitt*, 654 F.2d at 333. The party seeking indemnity bears the burden of proof. *See Marseilles Homeowners Condo. Ass'n v. Broadmoor, LLC*, 2012-1233 (La. App. 4 Cir. 2/27/13), 111 So. 3d 1099, 1111 ("Because [the defendant] is the party demanding performance of the indemnity and defense obligations, it is the party at trial with the burden of proof.") (emphasis omitted).

When an indemnity agreement "covers defense costs, the allegations of the complaint against the indemnitee are irrelevant to the indemnitor's obligation to pay." *James v. Hyatt Corp. of Del.*, 981 F.2d 810, 815 (5th Cir. 1993). Rather, "[t]he terms of the indemnity agreement itself govern the obligations of the parties." *Id.* Here, the indemnity agreement provides unambiguously that Otis shall indemnify Pinnacle only in certain enumerated instances, including incidents related to: (1) Otis's performance of the service agreement; (2) Otis's failure to comply with its contractual obligations; (3) property damage or destruction caused by Otis; (4) Otis's intentional, reckless or negligent acts or omissions; (5) Otis's failure to comply with any applicable law or regulation; and

6

(6) any claim by an Otis employee against Pinnacle, with the exception of those arising out of Pinnacle's negligence. (*See* Doc. 16-3 at 3). Pinnacle has failed to point to any language in either the service agreement or the addendum that provides for indemnification in any other circumstance.

Because Pinnacle has not introduced evidence that any of these circumstances applies, it has not met its burden to establish any disputed material fact with respect to Otis's indemnity obligations. Notably, Myles does not allege, and Pinnacle does not attempt to prove, that Myles' fall was "directly or indirectly related to" Otis' performance of its duties, or that Otis failed to fulfill any of its contractual obligations under the service agreement. Nor has Pinnacle claimed that Otis was negligent in performing its obligations. Notwithstanding this crucial omission, Pinnacle asks the Court to essentially assume that because Otis is responsible for routine maintenance and inspection, it is automatically obligated to indemnify Pinnacle for any accident related to the escalator, regardless of the cause. Such an assumption is one the Court is not permitted to make. *See, e.g.*, *James*, 981 F.2d at 815 (finding no duty to indemnify where the indemnity agreement "provided indemnity only for losses caused by" the indemnitor, and the trial judge had found no negligence or other basis of liability on the part of the indemnitor).

Indeed, Pinnacle plainly misstates the trigger for Otis's duty to indemnify, arguing in briefing that "if there is any 'claim' that is directly or indirectly related to the escalator failing because it was not examined, cleaned, maintained or adjusted in accordance with the applicable standards," Otis must indemnify Pinnacle. (Doc. 27 at 5). But, according to the plain language of the indemnity provision, it is only if the escalator was not "examined, cleaned, maintained, or adjusted" *by Otis*, or if an accident is otherwise "directly or indirectly related to" Otis's performance of the service agreement, that Otis would be liable for indemnification. And neither

7

the service agreement itself nor the addendum contains any "clear expression" of a duty to indemnify in the absence of any neglect, failure to perform, or violation of law by Otis. *See, e.g.*, *Corbitt*, 654 F.2d at 333. Thus, Pinnacle has fallen well short of its burden to demonstrate that Otis owes any duty to indemnify it, irrespective of whether or not Pinnacle could be found liable to Myles for any amount of her alleged damages. *See, e.g.*, *Lascola v. Schindler Elevator Corp.*, No. 08-4802, 2011 WL 4807697, at *3 (E.D. La. Oct. 11, 2011) (denying a cross-claimant's motion for summary judgment against an elevator company on indemnity grounds where, as here, the cross-claimant failed "to offer any material facts to trigger [the elevator company's] indemnification responsibility under the [maintenance agreement]" and failed to "delineate which contractual provisions were breached").

## IV. CONCLUSION

Accordingly, for the foregoing reasons, **IT IS ORDERED** that the Motion for Summary Judgment (Doc. 16) is **GRANTED**, and all third-party claims asserted by Pinnacle against Otis are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on June 10, 2019.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**